UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Pamela Cole,<br>           *Plaintiff*,<br><br>     vs<br><br>Group Health Plan, Inc. d/b/a<br>HealthPartners, a Minnesota non-profit<br>corporation,<br>           *Defendant*. | Court File No. 22-cv-2686<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pamela Cole ("Plaintiff Cole"), makes the following allegations for her Complaint against Defendant Group Health Plan, Inc. d/b/a HealthPartners ("Defendant HealthPartners").

### INTRODUCTION

1.     In August, 2021, Defendant HealthPartners mandated that all its employees, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate"). Many of the Defendant's employees, including Plaintiff, objected to receiving the vaccinations because of their sincerely-held religious beliefs. Plaintiff filed a request for a religious exemption with the Defendant to be exempt from taking the Covid-19 vaccination.

2.     Defendant granted Plaintiff's request for the religious exemptions, but required Plaintiff to dress differently than vaccinated employees, and to wear protective gear when vaccinated employees were not similarly required to wear protective gear, in

an attempt to mark Plaintiff and all unvaccinated employees differently, and to call attention to them to make them the subject of scorn and ridicule.[1]

---

[1] In the United States, the unvaccinated have endured a great deal of hatred from the President of the United States down, through politicians, the media, the entertainment industry, and inside of the medical industry itself.  The unvaccinated have been ostracized, been fired  and other retaliatory consequences if their names become known, and even public hate, as is shown by the following examples of a pervasive climate of fear and loathing of the unvaccinated: 1) MSNBC guest Frank Schaeffer stating that those who are "anti-vaccine" are "bio terrorists" who should be the target of "drone strikes." https://www.breitbart.com/politics/2021/09/10/msnbc-guest-calls-drone-strikes-americans-opposed-vaccine-mandates/. 2) New York City Mayor de Blasio, announcing his "vaccine passport for New York City declared that "If you want to participate in our society fully, you've got to get vaccinated." *See video @https://tinyrul.com/j4npw5c h.* 3) On ABC News, commentator Margaret Hoover declared that government, by withholding all benefits from the unvaccinated, should "just make it almost impossible for people to—to live their lives without being protected and protecting the rest of us." *This Week, July 25, 2021,* https://abcnews.go.com/Politics/week-transcript-25-21-speaker-nancy-pelosi-sen/story?id=79045738.
 4) On CNN, commentator Don Lemon stated to Chris Cuomo that "[If you] don't get the vaccine, you can't go to the supermarket.  Don't have the vaccine, can't go to the ball game.  Don't have a vaccine, can't go to work.  You don't have a vaccine, can't come here.  No shirt, no shoes, no service." https://www.realclearpolitics.com/video/2021/08/01/don_lemon_no_shirt_no_shoes_no_vaccine_no_service.html.   5) On his late night "comedy" show Jimmy Kimmel stated that the unvaccinated who contract COVID should be allowed to die rather than being admitted to the hospital: "Rest in peace, wheezy."[1]  The audience roared its approval. https://www.westernjournal.com/late-night-host-ghoulishly-mocks-sick-unvaccinated-rest-peace-wheezy/.  6) In The Week, Ryan Cooper declared that "Anti-vaxxers" (i.e. people who decline the COVID vaccines) "should be exiled from society until they get their shots, and their efforts to intimidate people against controlling the pandemic should be met with massive resistance."   https://theweek.com/coronavirus/1002909/theres-1-obvious-solution-to-the-delta-variant-mandatory-vaccination. 7) President Biden, in his remarks accompanying his Executive Order stated: "This is a pandemic of the unvaccinated. …   Instead of encouraging people to get vaccinated and mask up, they're [other elected officials] ordering mobile morgues for the unvaccinated dying from COVID in their communities.  This is totally unacceptable. … That 25 percent [unvaccinated] can cause a lot of damage — and they are.  … The unvaccinated overcrowd our hospitals, are overrunning the emergency rooms and intensive care units, leaving no room … [the unvaccinated] are keeping us from turning the corner.  These pandemic politics, as I refer to, are making people sick, causing unvaccinated people to

2

3. Based on Defendant's implementation of the Vaccine Mandate and its discriminatory treatment, Plaintiff brings claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

4. Plaintiff has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

5. This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6. This Court has personal jurisdiction over Defendant Health Partners as it is a non-profit corporation operating in and located in the State of Minnesota.

7. Defendant HealthPartners is subject to the provisions of Title VII and the

---

die. We cannot allow these actions to stand in the way of protecting the large majority of Americans…We've been patient, but our patience is wearing thin.  And your refusal has cost all of us. …  For the vast majority of you who have gotten vaccinated, I understand your anger at those who haven't gotten vaccinated. … " *President Biden address, September 9, 2021.*

ADA because Defendant HealthPartners employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

8. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant conducts business in the State of Minnesota.

## PARTIES

9. Plaintiff Cole is a Carver County, Minnesota resident who worked for Defendant HealthPartners and predecessor companies most recently as a physical therapist and certified wound specialist. She has worked for Defendant HealthPartners and predecessor companies for over 25 years.

10. Defendant Group Health Plan, Inc. d/b/a HealthPartners is a Minnesota Nonprofit Corporation which operates medical facilities in Minnesota.

## FACTS

11. During the pandemic in 2020 and 2021, Plaintiff was asked to work additional time and cover additional patients to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic. At that time, Plaintiff, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

12. Defendant recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.

13. However, in August 2021, Defendant HealthPartners implemented its

Vaccine Mandate for all of its employees. The Vaccine Mandate stated that "*HealthPartners will require Covid-19 and influenza vaccination for all colleagues.*" "*Colleagues will have until Oct. 29, 2021 (for Covid-19) … to become fully vaccinated or document their declination.*" (emphasis added).

14. Defendant HealthPartners allowed employees to request a religious or medical exemption. However, if employees sought a religious or medical exemption, they had to agree to being treated discriminatorily. For example, if they were granted an exemption, they had to agree to "*observe additional infection prevention/source control measures,*" including:

- "*Wearing a medical grade PPE mask at all times while working in any HealthPartners facility and at any in-person work activity or event at any time,*"

- "*Wearing additional PPE as appropriate …*"

- "*being reassigned to a different patient care area or other work setting …*". (emphasis added).

15. In exchange for receiving a religious exemption, unvaccinated employees were also forced to consent to disclosing medical information to their superiors. For example, Defendant required Plaintiff, as an unvaccinated employee, to reveal "*the status*" and Plaintiff's "*exemption request (approved or denied) will be available to my leader.*"

16. Further, the vaccinated employees were distinguished from unvaccinated employees with insignia on their work uniforms. The vaccinated were given "*an orange badge lock (which represents the Covid-19 vaccine primary series)*". (the "Orange

5

Badge Lock"). Defendant stated the Orange "*Badge locks must be worn for colleagues to remove their masks in administrative facilities and non-patient care areas of our hospitals and clinics.*" Unvaccinated employees were not permitted to wear the "*badge locks,*" and therefore to not "*remove their masks in administrative facilities and non-patient care areas of [Defendant's] hospitals and clinics.*"

17. In practice, the unvaccinated employees, including Plaintiff, were marked by the absence of the Orange Badge Lock. This meant that in any work setting, the Defendant's employees would notice whether there were any fellow employees without the Orange Badge Lock, and to frequently criticize the un-badged employees for not being "Badged." The "Badged" employees would be forced to mask up when unvaccinated employees would enter a room, leading the vaccinated to blame the unvaccinated for the absence of the "badge" resulted in people having to take extra precautions mandated by the Vaccine Mandate. To avoid these uncomfortable situations, Plaintiff Cole would attend meetings via Zoom, instead of in person.

18. Further, HealthPartners employees who did not "remove their masks" in administrative facilities or non-patient areas of HealthPartners hospitals and clinics, would be known to be unvaccinated.

19. The Orange Badge Lock was intended to "*be used as an indication of up-to-date vaccination status. Starting Nov. 28, the new red badge locks must be worn for colleagues to remove their masks in administrative facilities and non-patient care areas of our hospitals and clinics.*" Thus, Defendant HealthPartners intended the Orange Badge Locks to be a public indication of vaccination status.

6

20. The Orange Badge Lock thus created discrimination in the workplace. Defendant HealthPartners employees would lose their job if they failed to become vaccinated or agreed to the additional terms and be distinguished based on whether they wore the Orange Badge Lock or not.

21. The Vaccine Mandate applied to all employees regardless of role and work location, meaning even workers working remotely were required to be vaccinated.

22. Plaintiff had worked for approximately one and one-half years during the Covid-19 Pandemic without the vaccine and without the Orange Badge Locks.

23. Plaintiff Cole practices the Eckankar religion and believes that God gave each person bodies to serve Him.  Plaintiff Cole believes we are to treat our bodies as temples and to be as conscious as we can with what goes into our bodies.  The ingredients of the available Covid-19 vaccines were not all disclosed, and it was not possible to determine what the Covid-19 vaccines would put into her body.  It was against Plaintiff Cole's religious beliefs to allow the Covid-19 vaccine into her body.

24. Plaintiff Cole had received numerous positive job performance feedback and compliments from Defendant HealthPartners.

25. Plaintiff Cole is aware of people who received the Covid-19 vaccine and then shortly thereafter became sick.

26. Plaintiff Cole contracted Covid-19 in November 2020 and recovered, providing her with natural immunity.

27. Plaintiff Cole did receive a religious exemption, but has been treated differently, and not given an Orange Badge Lock.  Plaintiff Cole has had to wear a

7

different kind of mask (medical grade), and her religious exemption information is known by her supervisors. Plaintiff's exemption status is known to all employees and staff, by virtue of her not having the Orange Badge Lock, and by not being permitted to remove her mask "in administrative and non-patient care areas" of Defendant HealthPartners' "hospitals and clinics."

28. Plaintiff Cole filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Cole a Right to Sue letter dated July 27, 2022.

29. The Plaintiff submitted a good-faith statement of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination.

30. Defendant never considered allowing Plaintiff to be accommodated by simply doing her job in the way she had been doing it for 25 years, or over the previous one and one-half years of the Covid Pandemic, prior to the Vaccine Mandate, and without discrimination.

31. Defendant, in issuing its Vaccine Mandates, instructed that its employees must be "*up-to-date on vaccinations*," meaning the "*Covid-19 vaccine primary series and the Covid-19 bivalent booster*."

32. Plaintiff Cole has never been determined to have transmitted the Covid-19 virus to any of Defendant's employees, or to any of Defendant's patients.

33. Defendant issued the Vaccine Mandate mandating its employees, including Plaintiff, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented,

does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "*I knew these vaccines were not going to protect against infection.  And I think we overplayed the vaccines …*".  Separately Dr. Birx also stated: "*When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied*, …".  Dr. Birx made her statements in July 2022, approximately one year after President Biden stated: "*If you get vaccinated, you won't get Covid.*"  President Biden (who has been vaccinated and boosted yet has contracted Covid-19 at least two times), made his statement after Director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci (who has been vaccinated and boosted yet has contracted Covid-19) made the statement that "*when people are vaccinated, they can feel safe they will not be infected.*"  Dr. Anthony Fauci made his statement after Center for Disease Control Director Dr. Rochelle Walensky (who has been vaccinated and boosted yet tested positive for Covid-19 as recently as October 2022) stated: "*vaccinated people do not get sick ... do not spread the virus.*"

34. While many, including the President, claimed that the Covid-19 Pandemic was a pandemic of the unvaccinated, he and the majority of people with Covid-19 were vaccinated to one extent or another, and frequently vaccinated and boosted.

35. A recent study indicates that people who took the Covid-19 vaccine are actually far more likely to be hospitalized than people with natural immunity.

36. The number of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

37. Similarly, the number of people who were counted as having died from Covid-19 were significantly overstated because many of them died with Covid-19, not from Covid-19.

38. The number of Covid-19 deaths were also overstated by upwards of 25%, or even more.

39. Dr. Deborah Birx stated "[b]ut let's be very clear: 50% of the people who died from the Omicron surge were older, vaccinated."

40. The VAERS system has established that the vaccines themselves, have resulted in numerous harmful side effects which exceed the adverse side effects of all other vaccines combined for the last thirty (30) years. Some of these harmful side effects are included in the list of side effects described right in the vaccine literature for each of the available vaccines.

41. Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

42. Plaintiff restates and realleges all previous allegations as if fully set-forth herein.

43. Defendant HealthPartners is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

44. The Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

45. Plaintiff has sincerely held religious beliefs which prevented her from receiving the vaccine. Plaintiff's beliefs arise because of her sincerely held religious beliefs.

46. Plaintiff informed her employer Defendant of the conflict between her religious beliefs and taking the Vaccine Mandate.

47. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

48. The Act prohibits Defendant from scrutinizing what the Defendant believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiff's exercise of her beliefs are logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

49. Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

50. In response to Plaintiff's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant discriminated against Plaintiff by either

forcing her to receive the vaccine, or distinguishing her and other unvaccinated employees from the vaccinated employees, so that all employees would know who was vaccinated, and who was unvaccinated. Further, all employees would know there were unvaccinated employees, and that additional masking and other protective measures may be required and blamed on the unvaccinated employees.

51. Despite the Plaintiff's requests for Defendant to engage in an interactive process regarding her requests for accommodation, Defendant refused to engage in the interactive process, and instead rejected Plaintiff's request for an exemption from the restrictions and has required discriminatory treatment.

52. As set forth above, Defendant could have accommodated Plaintiff's requests for a religious exemption without suffering any undue hardship by having her continue to do her job the same as she had done for the last one and one-half years of her employment, and without distinguishing the vaccinated employees from the unvaccinated employees. The restrictions placed on Plaintiff are without a rational business purpose after the advent of the Delta and Omicron variants of Covid-19, because the vaccinated are catching and transmitting Delta and omicron at virtually identical rates to the unvaccinated. As a consequence, these restrictions on Plaintiff are being maintained for the sole purpose of embarrassing unvaccinated employees and making them feel separate from their colleagues.

53. Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

54. Because of Defendant's unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

**State law religious discrimination claim under MHRA, Minn. Stat. § 363A.08**

55. Plaintiff restates and realleges all previous allegation as if fully set-forth herein.

56. Minn. Stat. § 363A.01, et seq. prohibits discrimination in employment based on religion.

57. Defendant is an "employer" within the meaning of Minn. Stat. §363A.01.

58. Plaintiff is an "employee" within the meaning of Minn. Stat. §363A.01.

59. Plaintiff has sincerely held religious beliefs which prevented her from receiving the Covid-19 vaccine.

60. Plaintiff informed Defendant employer of the conflict between Plaintiff's religious beliefs and the Vaccine Mandate.

61. Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to respect its employees' sincerely held religious beliefs.

62. Minn. Stat. §363A.01 et seq. prohibits Defendant from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiff's exercise

of their beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

63. In response to the Plaintiff's requests for respect of her sincerely-held religious beliefs, Defendant applied a uniform, blanket rule in discriminating against Plaintiff in her uniform and masking.

64. Despite Plaintiff's request for Defendant employer to respect Plaintiff's religious beliefs and request for a religious exemption, the Defendant refused to respect Plaintiff's religious beliefs, and instead Defendant has engaged in workplace discrimination.

65. Defendant's actions constitute discrimination on the basis of religion, in violation of Minn. Stat. § 363A.01 et seq.

66. Because of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which she has a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff above-named prays for judgment in her favor and against Defendant for an Order of the Court as follows:

1.	Adjudging that Defendant is liable to Plaintiff for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.	Enjoining Defendant from taking further illegal action against Plaintiff in violation of both state and federal law, and Ordering Defendant to take action to restore employee Plaintiff to her status she would have enjoyed absent Defendant's illegal conduct;

3.	Awarding Plaintiff her costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.	Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not have a scientific basis.

Dated: October 25, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*